OPINION OF THE COURT
 

 Jasen, J.
 

 In this declaratory judgment action, plaintiffs — manufacturers of brand name drugs, a trade association comprised of such manufacturers, and an association of pharmacists — attack the constitutionality of the “Generic Drug Substitution Law”. (L 1977, ch 776.) In our view, the “Generic Drug Substitution Law” is a reasonable exercise of the State’s police power and is rationally related to the legitimate purpose of safely reducing health care costs. We hold that the challenged law is constitutional and, therefore, affirm the order of the Appellate Division.
 

 Disturbed by the ever increasing cost of prescription drugs, this State adopted the “Generic Drug Substitution Law” (the Law) in 1977 (L 1977, ch 776).
 
 [1]
 
 Prior to the
 
 *491
 
 enactment of the Law, pharmacists were prohibited from “substituting] or dispensing] a different article for or in lieu of any article prescribed, ordered or demanded”. (Education Law, former § 6816, subd 1.) Besides creating an exception to this antisubstitution provision for generic drugs, the new law added section 206 (subd 1, par [o]) to the Public Health Law and sections 6810 (subd 6) and 6816-a to the Education Law. Under section 206 (subd 1, par [o]) of the Public Health Law, the New York State Commissioner of Health is required to promulgate a list of drug products which have been certified or approved by the Federal Food and Drug Administration (FDA) as being safe and effective for their indicated uses and for which there is no question of satisfying bioequivalency requirements. Following extensive consultation with the FDA, the Department of Health published its list of therapeutically equivalent drug products in March, 1978. (See 10 NYCRR Subpart 60-2.)
 

 Subdivision 6 of section 6810 of the Education Law provides that every prescription form used in this State shall contain two signature lines, one stating “substitution permissible” and the other stating “dispense as written”. If the physician signs the “substitution permissible” line, then he must “inform the patient that the pharmacist will substitute a drug product” which appears on the Department of Health’s list of generic substitutes. This section also provides that on each prescription form the following words must be conspicuously imprinted: “This prescription will be filled generically unless physician signs on line stating ‘dispense as written’.” (Education Law, § 6810, subd 6, par [a].)
 

 Under section 6816-a of the Education Law, a pharmacist is required to “substitute a less expensive drug product containing the same active ingredients, dosage form and strength as the drug product prescribed” if the physician signs the “substitution permissible” line and the substituted drug product appears on the Department of Health’s
 
 *492
 
 list. Finally, the pharmacist is required, in the event of substitution, to indicate on the label affixed to the immediate container in which the generic drug is dispensed the name and strength of the drug product and its manufacturer.
 

 In their complaint, plaintiffs set forth seven causes of action. The first cause of action alleges that the Law promotes unfair competition and the infringement of drug patents and trade-marks held by plaintiffs. The second cause of action alleges that the Law unlawfully discriminates against brand name drug products by creating defenses to claims for unfair competition and patent and trade-mark infringement. The third and fourth causes of action allege that defendants, in implementing the new law, failed to comply with the State Administrative Procedure Act and exceeded their statutory authority by including certain drugs on the Department of Health’s substitution list which do not qualify. The fifth cause of action alleges that the Law imposes an unnecessary burden on interstate commerce. The sixth cause of action alleges that, by interfering with medical relationships between pharmacists and patients and by restricting the patients’ right to make health-related decisions respecting the choice of drug products, the Law abridges the so-called “right to privacy between pharmacist and patient.” Finally, in their seventh cause of action, plaintiffs allege that the Law deprives them of liberty and property without due process of law.
 

 Special Term,
 
 inter alia,
 
 granted defendants’ motion for summary judgment to the extent of declaring the Law constitutional and dismissing plaintiffs’ first, second, fifth, sixth and seventh causes of action. The third and fourth causes of action were expressly severed and continued as article 78 proceedings.
 
 [2]
 
 According to Special Term, “[pjlaintiffs have failed to meet the heavy burden imposed on a party who seeks to overcome the strong presumption of constitutionality inherent in every statute enacted by
 
 *493
 
 the Legislature.” The Appellate Division unanimously affirmed, without opinion, and plaintiffs brought this appeal as of right on constitutional grounds. (CPLR 5601, subd [b], par 1.)
 

 In this court, plaintiffs assert that the courts below erred in granting summary judgment upholding the constitutionality of the “Generic Drug Substitution Law”. Although plaintiffs concede that this State has a legitimate interest in providing safe and effective drugs to its citizens at the lowest possible price, they assert that the Law is not rationally related to the attainment of this objective. Specifically, plaintiffs contend that the factual assumption underlying the Law — that generic drug products approved by the FDA are therapeutically equivalent to and may be safely substituted for their brand name counterparts — is not based on competent pharmacological and medical data and, therefore, that the Law is an unreasonable exercise of the police power. According to plaintiffs, the Legislature failed to make any independent findings concerning the therapeutic equivalence, safety and efficacy of generic drugs and, instead, unreasonably adopted the FDA’s findings as to drug product substitution. Relying on various affidavits, scientific studies, documentary evidence and the opinion of their own pharmacological expert, plaintiffs assert that questions of fact exist as to the therapeutic equivalence and safety of drug products on the Department of Health’s substitution list which must be developed at trial. We find all of plaintiffs’ contentions to be without merit.
 

 The principles of law applicable to the facts of this case are by now well established. Where a police power enactment is challenged on due process grounds, the test is whether there is “ ‘some fair, just and reasonable connection’ between it and the promotion of the health, comfort, safety and welfare of society.”
 
 (Montgomery v Daniels,
 
 38 NY2d 41, 54.) Moreover, every legislative enactment enjoys a strong presumption of constitutionality which, although rebuttable, requires the challenging party to demonstrate that the enactment is unconstitutional beyond a reasonable doubt. (See, e.g.,
 
 Robert E. Kurzius, Inc. v Incorporated Vil. of Upper Brookville,
 
 51 NY2d 338, 344;
 
 *494
 

 Town of Huntington v Park Shore County Day Camp of Dix Hills,
 
 47 NY2d 61, 65;
 
 Montgomery v Daniels, supra.)
 

 The parties agree that the standard of review applicable to this case is the familiar “rational basis” test, and, as noted earlier, plaintiffs concede that safely providing prescription drugs at a reduced price is a legitimate State objective. The only question that remains is whether the “Generic Drug Substitution Law” is rationally related to the achievement of that purpose.
 

 Contrary to plaintiffs’ assertion, the Legislature did not act in a frivolous manner in enacting the Law. In the months preceding its adoption, numerous hearings were held at which the question of therapeutic equivalence was extensively debated. Detailed evidence for and against the Law, including some of the exact proof relied on by plaintiffs in this case, was submitted to the Legislature. In the end, the Legislature obviously determined that “[ajllegations that generic drugs are not as safe and effective as brand name drugs have been disproved by an accumulation of evidence.” (NY Legis Ann, 1977, p 259.) To now allow plaintiffs to relitigate, in the guise of a constitutional challenge, the very same factual determination made by the Legislature as to the therapeutic equivalence of generic drugs would be most inappropriate. Indeed, “it would be a demonstration of judicial arrogation and highly inept and inapt to express any opinion as to the factual predicate for this legislation”.
 
 (Montgomery v Daniels,
 
 38 NY2d 41, 53,
 
 supra.)
 
 The bare existence of conflicting empirical proof on the issue whether generic drugs may or may not be safely substituted for their brand name counterparts is insufficient to raise any real question as to the Law’s constitutionality; nor may plaintiffs “procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.”
 
 (Minnesota v Clover Leaf Creamery Co.,
 
 449 US 456, 464; cf.
 
 Town of North Hempstead v Exxon Corp.,
 
 53 NY2d 747.)
 

 Similarly, we cannot say that the Legislature acted unreasonably in directing the Department of Health to rely on, although not to defer to, the FDA’s specific findings of therapeutically equivalent drug products in compil
 
 *495
 
 ing New York’s list of permissible generic substitutes. The FDA is given the responsibility of assuring the supply of safe and effective drugs on a national level. (See US Code, tit 21, § 355.) This Federal agency has both superior expertise and extensive resources at its disposal, and the test it employs in certifying drugs as safe and effective is truly “a rigorous one”.
 
 (Weinberger v Hynson, Wescott & Dunning,
 
 412 US 609, 630.) Plaintiffs’ contention that the Legislature must conduct
 
 de novo
 
 an independent investigation into the therapeutic equivalence of each drug placed on the Department of Health’s list of substitutes is supported neither by sound principles of constitutional law nor common sense. If plaintiffs entertain definite fears as to the safety of particular drugs found on the list of substitutes, then they should provide the Department of Health with this information. Instead, they have launched this broadsided attack on the constitutional validity of the Law.
 

 Plaintiffs’ remaining contentions require only a brief discussion. The “Generic Drug Substitution Law” does not promote unfair competition or the infringement of drug patents and trade-marks; nor does the Law create any defenses to such claims. In order to comply with the Law, a pharmacist is not required to stock or sell an infringing generic substitute, and, as noted by Special Term, plaintiffs’ rights and remedies under the patent and trade-mark laws are the same now as they were prior to the passage of the Law. In this regard, it is also worth noting that an official from the Department of Health testified that the list of substitutes would be revised to reflect the judicial resolution of any patent or trade-mark dispute involving drug products.
 

 Nor are we persuaded by plaintiffs’ commerce clause claim. The Law does not discriminate between in-State and out-of-State manufacturers and, as discussed earlier, it serves a legitimate State interest by providing New York patients with the benefits of low-priced medication. Plaintiffs have come forth with no showing that “the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.”
 
 (Pike v Bruce Church,
 
 397 US 137,142.) Absent something more definite than plaintiffs’ bare allegation that the Law imposes an
 
 *496
 
 unnecessary burden on interstate commerce, the constitutionality of the Law should be sustained. (Accord
 
 Pharmaceutical Soc. of State of N. Y. v Lefkowitz,
 
 586 F2d 953, 957-958; compare
 
 Monroe-Livingston Sanitary Landfill v Town of Caledonia,
 
 51 NY2d 679,
 
 with. Dutchess Sanitation Serv. v Town of Plattekill,
 
 51 NY2d 670.)
 

 Finally, the Law suffers no constitutional infirmity by reason of abridging some ephemeral “right to privacy between pharmacist and patient.” In the first place, it is doubtful whether any such right exists, and plaintiffs have cited no authority to support the proposition that it does. True, the Supreme Court has recognized a constitutional “interest in independence in making certain kinds of important decisions”
 
 (Whalen v Roe,
 
 429 US 589, 599-600), including a patient’s “right to decide independently, with the advice of his physician, to acquire and use needed medication”
 
 (Whalen v Roe, supra,
 
 at p 603). Even though the “ ‘outer limits’ of the decision-making aspect of the right to privacy ‘have not been marked by the Court’”
 
 (People v Onofre,
 
 51 NY2d 476, 486, quoting
 
 Carey v Population Servs. Int.,
 
 431 US 678, 684-685), the right to privacy typically has been held to encompass only “matters relating to marriage, procreation, contraception, family relationships, and child rearing and education.”
 
 (Paul v Davis,
 
 424 US 693, 713.)
 

 In any event, assuming the existence of such a right to privacy, it is not violated by the “Generic Drug Substitution Law”. As licensed health professionals, pharmacists are subject to the State’s “broad police powers in regulating the administration of drugs.”
 
 (Whalen v Roe, supra,
 
 at p 603, n 30 [and cases cited therein].) As to the patient’s right to privacy, aside from the obvious difficulty with plaintiffs’ standing to assert this right, we are in agreement with the views expressed by the Second Circuit, which addressed a similar claim: “The decision to use a brand name or generic drug, and which brand name to use, remains as before with the doctor and the patient; the provisions of the Generic Drug Act only come into play
 
 after
 
 their initial choice (usually that of the doctor) has been made between ‘dispense as written’ and ‘substitution permissible’. Here, as under prior law, there is no depriva
 
 *497
 
 tion of the right of the patient, with the advice of his or her doctor, to decide on the proper medication.”
 
 (Pharmaceutical Soc. of State of N. Y. v Lefkowitz,
 
 586 F2d 953, 958,
 
 supra
 
 [emphasis in original].) Indeed, as defendants note, by providing the patient with information concerning less expensive drug substitutes, the Law has the beneficial effect of broadening the patient’s choice in terms of needed medication.
 

 In sum, the “Generic Drug Substitution Law” does not promote unfair competition or patent or trade-mark infringement; nor is the Law violative of due process, the commerce clause, or the so-called patient-pharmacist “right to privacy”. The Law merely facilitates the exercise of the physician’s responsibility to determine whether and under what circumstances generic drugs are to be prescribed.
 

 For all these reasons, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
 

 Order affirmed.
 

 [1]
 

 . In Governor Carey’s memorandum approving the Law, the following observations were made: “Every year American consumers spend roughly $8 billion on drugs.
 
 *491
 
 Prescription drugs are not a luxury; for many people, particularly the elderly, they are a life-sustaining necessity. Yet, consumers are forced to purchase the more expensive brand name drugs because most physicians choose to prescribe by brand name; and pharmacists are prohibited by law from substituting equivalent but less expensive generic drugs.” (NY Legis Ann, 1977, p 259.)
 

 [2]
 

 . By a subsequent judgment, Special Term also dismissed plaintiffs’ third and fourth causes of action as being barred by the four-month Statute of Limitations applicable to article 78 proceedings. (See CPLR 217.) As a result of Special Term’s severance of these claims from the remaining causes of action, the propriety of this subsequent dismissal on Statute of Limitations grounds is not before us on this appeal.