SAVINGS BANK OF UTICA, Appellant, v NEW YORK STATE TAX COMMISSION, Respondent.

Fourth Department, March 1, 1985

**APPEARANCES OF COUNSEL**

*Evans, Severn, Bankert & Peet* (*Thomas F. O'Donnell* of counsel), for appellant.

*Robert Abrams, Attorney-General* (*Michael S. Buskus* and *William J. Kogan* of counsel), for respondent.

**OPINION OF THE COURT**

DOERR, J.

■ The central issue on this appeal is whether the New York franchise tax scheme, which provides different tax treatment for commercial and savings banks (Tax Law § 1450 *et seq.*), violates the equal protection clause of the Constitution. A similar challenge was rejected over a decade ago (*Woodside Sav. & Loan Assn. v Gallman,* 73 Misc 2d 357, *affd on opn below* 34 NY2d 674), but plaintiff argues that legislative changes in the ensuing years, which have largely obliterated the distinctions between the two banks, have rendered the taxing statute unconstitutional. For the reasons that follow, we reject this contention and conclude that the historical differences which justified different tax treatment in an earlier day have continuing validity today.

The State of New York imposes a franchise tax on all banking corporations, not as an income or property tax, but as a tax "[f]or the privilege of exercising its franchise or doing business in this state" (Tax Law § 1451 [a]). All banks must pay the greater of the basic tax (which is 12% of net income) or the alternative minimum tax. The formula for computing the alternative minimum tax is not the same for savings banks as for commercial banks. For commercial banks, the minimum tax is 1.6 mills for each dollar of par value of stock (Tax Law § 1455 [b] [1]). For savings banks, however, the alternative minimum tax is 1.6% of the first 3.5% of interest or dividends credited to depositors or shareholders (Tax Law § 1455 [b] [2]).[1] Plaintiff has submitted affidavits demonstrating that the alternative minimum tax liability for savings banks is .04-.06% of assets compared, to .002-.003% for commercial banks. Stated another way, the alternative minimum tax liability of savings banks is 20 times greater than commercial banks, when the taxes are measured as a percentage of total assets.

Defendant concedes the foregoing, but argues that the current law, nonetheless, results in over-all parity. Defendant has submitted an affidavit showing that commercial banks, which own roughly 75 to 80% of the assets of all banks in New York, pay approximately 78 to 79% of all franchise taxes paid by banks. Conversely, savings banks, which own roughly 20 to 25% of the assets of all banks in New York, pay 21 to 22% of all franchise taxes paid by banks. The reason for this result, of course, is that commercial banks generally show a profit and accordingly pay the basic tax rather than the alternative minimum tax.

1. The Tax Law contains additional matter and exceptions not critical to the disposition of this appeal.

We are thus asked to hold that, although the taxing statute achieves over-all fairness, it is nevertheless unconstitutional because a different minimum tax formula applies to savings banks than to commercial banks.

We begin our analysis by noting that a strong presumption of constitutionality attaches to a legislative enactment (*Hotel Dorset Co. v Trust for Culture Resources,* 46 NY2d 358, 369-370). The challenging party bears the burden of establishing unconstitutionality beyond a reasonable doubt (*Pharmaceutical Mfrs. Assn. v Whalen,* 54 NY2d 486, 493). We decline plaintiff's suggestion that we apply a "heightened scrutiny" test to the statute. Instead, we apply the "rational basis" test (*Matter of Long Is. Light. Co. v State Tax Commn.,* 45 NY2d 529, 535; *Shapiro v City of New York,* 32 NY2d 96, 103; *compare, Board of Educ. v Nyquist,* 57 NY2d 27, 42-44).

The rational basis for the taxing statute is best understood by looking at it in its historical context. Originally, savings banks and commercial banks were very different institutions. Commercial banks were basically profit-making business corporations owned by stockholders, while savings banks were mutual institutions having no stockholders but earning money for their depositors (*People v Franklin Natl. Bank,* 305 NY 453, *revd on other grounds* 347 US 373). Prior to 1945, the franchise tax formula for commercial banks was essentially the same as now; commercial banks paid the higher of a basic tax on profit or a minimum tax based on par value of stock. Savings banks, however, were taxed on their surplus of savings. A 1945 amendment to the Tax Law provided that both kinds of banks would be taxed at a percentage of net income. Additionally, both banks would be subject to an alternative minimum tax, if this tax resulted in a higher amount. The alternative minimum tax applicable to commercial banks was left as it was — a figure based on issued stock. Savings banks, which had no stock, were given an alternative minimum tax based on some percentage of the interest credited to depositors (L 1945, ch 764, § 3). The bill jacket for the 1945 amendment contains several memoranda indicating that the purpose of the law was to lessen the tax burden on savings banks so as to bring their tax liability more in line with that paid by commercial banks when taxes were viewed as a percentage of assets. As indicated earlier, this legislative goal is currently met because the amount of franchise tax actually collected from each type of bank is in proportion to its total share of assets.

The bill jacket also reveals that the Legislature was aware that the minimum alternative tax applicable to savings banks

would impose a greater tax than the minimum alternative tax applicable to commercial banks. However, it was observed that such a system was necessary because the basic tax would not yield significant amounts from savings banks, which are not structured to show a profit to the bank itself. The profit earned by a savings bank is generally paid out to depositors in the form of interest, leaving little or no net income to the bank itself. Commercial banks, by contrast, pay out relatively little money in interest, even though they earn substantial sums from commercial loans. Thus, commercial banks, unlike savings banks, show a substantial net profit. A franchise tax based on income will, accordingly, produce substantial revenues from a commercial bank but only minimal amounts from savings banks.

Conversely, a tax tied to interest paid would not yield substantial revenues from commercial banks, although it would from savings banks. Thus, from the inception of the taxing scheme, the Legislature recognized that one tax formula could not be used to tax both types of banks effectively.

Although the distinctions between savings and commercial banks have blurred considerably since 1945, the attributes which justified the different tax treatment are still valid. Plaintiff's own affidavits establish that commercial banks do continue to show a net profit and thus pay the basic tax, while savings banks have actually shown a net loss. While savings banks are now authorized to provide a great many services not previously allowed, such as checking accounts and credit cards, the fact remains that savings banks, by and large, remain mutual institutions which handle savings accounts and provide money for long-term residential real estate mortgages. Commercial banks, conversely, derive a much lower proportionate share of their revenue from such sources and pay out a much smaller proportion of interest. Because of these differences, one tax formula could not produce an equitable tax from both banks.[2]

It must be remembered that the franchise tax is not an income tax. The franchise tax is a tax imposed for the privilege of doing business in the State as a corporate entity. Although savings banks may not show a net income, there can be no dispute that savings banks carry on a substantial volume of business within this State. The Legislature is permitted to impose a franchise tax on that privilege, regardless of whether the entity shows a

---

**2.** It is interesting to note that plaintiff's own affidavits show that if the minimum tax formula applicable to savings banks were applied to commercial banks (i.e., a percentage of interest), commercial banks would still have a minimum tax liability only half that of savings banks. This fact demonstrates the need for different tax treatment to achieve equity.

net profit. The intent of the Legislature is to collect a franchise tax in an amount related to the volume of business being done within the State. The current franchise taxing scheme, which in practice levies a 12% net income tax against commercial banks and a percentage of interest paid to depositors against savings banks, achieves the legislative goal. Although the day may come when the statute no longer effects parity, at the present time plaintiff has not demonstrated, prima facie, inequitable treatment.

■ Finally, we address plaintiff's argument that the franchise tax scheme violates the NY Constitution, article XVI, § 4, which provides that there shall be no discrimination in the rates and method of taxation between corporations incorporated under the laws of the United States and other corporations "exercising substantially similar functions and engaged in substantially similar business within the state." As pointed out above, commercial banks and savings banks do not in fact exercise substantially similar functions or engage in substantially similar business. Moreover, since Federally chartered and State-chartered commercial banks are treated identically, and Federally chartered and State-chartered savings banks are treated identically, the franchise tax scheme does not violate this provision.

Accordingly, the order and judgment appealed from should be affirmed.

HANCOCK, JR., J. P., CALLAHAN, DENMAN and SCHNEPP, JJ., concur.

Order and judgment unanimously affirmed, without costs.