*778 OPINION OF THE COURT
David B. Saxe, J.
In this action various members of the medical and pharmaceutical professions challenge a regulation promulgated by the New York State Health Commissioner (Commissioner), imposing stringent limitations on the prescription of some common tranquilizers. The Commissioner now moves for summary judgment dismissing the complaint.
A. the facts of the dispute
In 1986, the Commissioner of the Department of Health, David Axelrod, promulgated 10 NYCRR 80.67, significantly changing the prescription methods for a group of commonly used sedatives collectively known as benzodiazepines, categorized as schedule IV controlled substances in Public Health Law § 3306. Included in this group are Valium and librium. Specifically, the regulation requires these drugs be prescribed in official triplicate prescriptions, prohibits refills and limits patients to a 30-day supply. The regulation is in response to Axelrod’s findings that large numbers of these drugs are misused, diverted to nonmedical uses and overprescribed by careless physicians. According to the evidence submitted, in 1985, 86 million benzodiazepines were prescribed nationwide with up to 8.6 million of those occurring in New York. Axelrod has found instances of patients receiving sedative prescriptions from numerous doctors, appropriately called "prescription-shopping”. Also the prescription forms used presently are sometimes forged or stolen and it is relatively easy for a person to have pads of the forms printed and used illegally. Among other problems the regulation seeks to remedy are the increased rate of bone fractures in elderly patients, nonmedical use among teen-agers, impaired driving ability and, most commonly, prescribed addiction, where patients become physically addicted to their sedatives.
The plaintiffs, who oppose the regulation, fear the regulation will excessively intrude on their ability to freely treat their patients, by making it difficult to prescribe these sedatives. The plaintiffs believe there is no unreasonable danger for the millions of Americans who are or will be using schedule IV sedatives. They contend that abuse by some individuals is an insufficient reason to affect the entire medical community as well as the patients using the drugs and the pharmacists filling the prescriptions. They assert that the *779 statute will not eliminate what both parties acknowledge as an overwhelming problem, illegal street sales and abuse. They therefore seek a declaratory judgment finding the regulation unconstitutional; they oppose Axelrod’s motion for summary judgment and seek a trial on the merits.
B. THE PARTIES’ LEGAL CLAIMS
1. Doe's Claims for Declaring 10 NYCRR 80.67 Unconstitutional
The plaintiffs’ claim that the regulation is unconstitutional rests on three primary contentions: (1) that the regulation has no rational basis; (2) that the regulation violates the patients’ right to privacy, and (3) that Commissioner Axelrod did not follow required administrative procedure. They also claim the regulation violates the separation of powers doctrine and the Interstate Commerce Clause.
It is asserted that the scientific data used by Axelrod in finding a rational need for this regulation is invalid and without scientific foundation and thát because the scientific evidence is inconclusive Axelrod has imposed his interpretation of this evidence on the public health community-at-large thereby abusing his discretion as Commissioner. The plaintiffs argue that simply because benzodiazepines are widely prescribed, it does not necessarily follow that they are overprescribed or abused. While not disputing that certain problems exist, it is the plaintiffs’ position that the statistical evidence showing the problems of addiction, diversion, etc., all amount to the reasonable risks inherent in prescribing drugs that remedy a whole spectrum of physical and psychological ills. The plaintiffs have submitted numerous articles and reports supporting the view that the use of benzodiazepines presents no serious public health threat and that on the contrary they have been found very useful in the treatment of problems ranging from muscle strain to psychological anxiety. If the Commissioner must find some means of controlling or decreasing the number of sedative prescriptions, they argue, it is not necessary to monitor every single doctor in the State. An investigative force or increased educational efforts would achieve the same results without affecting the medical community wholesale.
Secondly, the plaintiffs claim that the requirement of triplicate prescription forms intrudes on not only the patient’s right to privacy but also on the privileged privacy of the *780 doctor-patient relationship. The triplicate prescription system allows the Department of Health to keep a detailed record of all such prescriptions on computer files, which the Department may review to determine the existence of irregularities, focus on specific doctors or areas in its educational efforts or, as the plaintiffs claim, to regulate doctors by intimidating them excessively and arbitrarily.
Thirdly, it is asserted that in promulgating this regulation Axelrod did not follow proper procedures in that he looked to the Public Health Council rather than the Drug Abuse Advisory Council (DAAC) for recommendations on this issue. DAAC is the advisory body which specializes in drug-related issues confronting the Department of Health. The plaintiffs claim that because the DAAC was not in favor of the regulation or could not reach a conclusion amenable to the Commissioner, their capacity as an advisory body was bypassed in favor of the Public Health Council which endorsed the regulation.
Lastly, they contend that the Commissioner violated the separation of powers doctrine by promulgating a regulation in an area that is better left to the decisions of the State Legislature. Along the same lines, they contend that the regulation facially discriminates against out-of-State doctors who treat New York patients. These out-of-State doctors will not be able to obtain the triplicate forms, they claim, thus completely preventing them from prescribing benzodiazepines to patients who fill their prescriptions in New York.
2. Axelrod’s Arguments for Summary Judgment Dismissing Doe’s Complaint
Commissioner Axelrod, for his part, denies all the contentions raised by Doe. In support of his argument that there is a rational basis for the regulation, Axelrod has submitted a wide variety of scientific studies done by groups such as the United States General Accounting Office, the Drug Awareness Warning Network (DAWN), and articles from publications including American Druggist, Biological Psychiatry and the British Journal of Addiction. Some of the problems found to be associated with benzodiazepines mentioned earlier have devastating, sometimes even fatal, consequences on both individuals and on society as a whole. The studies discuss how the withdrawal symptoms suffered by persons using these drugs can be as debilitating and terrifying as the withdrawal from alcoholism or barbiturate addiction. Often these sedatives are *781 prescribed to patients seeking to withdraw from the effects of alcohol; what results is either a dual dependency on both alcohol and the sedatives or the sedative addiction substitutes for the alcohol addiction. There are personal accounts, such as that of a 63-year-old woman who needed a six-week hospital stay to detoxify after benzodiazepine addiction. Axelrod argues that the regulation is an appropriate response to what both parties admit are problems with these drugs. The Commissioner believes the triplicate system will allow the Department of Health to more adequately and efficiently focus on the needs for education, investigation and peer advisement programs for physicians. Axelrod argues that this method is the least intrusive, most economical method possible with which to achieve the desired results.
The Commissioner contends that the record-keeping system allowing the State to maintain copies of all benzodiazepine prescriptions does not constitute a violation of individual privacy rights. According to him, there is no presumption of wrongdoing if a patient receives a triplicate prescription. If a patient has a legitimate reason for taking these drugs, there should never be any need for concern. The State will have no record of what illness the patient is suffering from and will still have to meet just cause requirements in the case of searches and investigations. The Commissioner details the security measures taken by the State which drastically limit access to the files to a few individuals. The Department has modified the triplicate form to include the name and address of the patient, the name, address and phone number of the pharmacy, the directions for dosage, the doctor’s name, the substance code number and a pharmacy file number much of which will be preprinted. Patients with serious health problems requiring regular refills would most likely fall under one of the four categories of exceptions. Any patient with one of the following may receive a 90-day supply instead of the normal 30-day supply: persons with (1) minimal brain dysfunction, (2) convulsive disorders, (3) chronic and incurable diseases who are over the age of 65 and (4) narcolepsy and panic disorders. These exceptions allow persons with a pressing need for the drugs to limit the number of times new prescriptions are issued, thus reducing the size of their computer file.
On the issue of whether Axelrod complied with State Administrative Procedure Act §§ 202-a and 202-b in promulgating the regulation, the Commissioner contends he "overcomplied” by doing more than was necessary in his efforts to most *782 appropriately address the problem. He denies that he bypassed the Drug Abuse Advisory Council and argues that the plaintiffs understate the amount of approval the regulation received from that body. There is no requirement in promulgating this type of regulation that the Department of Health hold hearings; yet hearings were held and the opinions of a wide variety of persons were presented. The Department also performed a regulatory impact statement detailing the reasons for the regulation that were the cumulative results of the Department of Health’s investigation into benzodiazepine use. Axelrod states that the Department reviewed approximately 200 articles in reaching the conclusion that the regulation is necessary.
In response to the claim that he violated the separation of powers doctrine, the Commissioner points to Public Health Law § 3338 (3) which states, "The commissioner may, by rule or regulation, require that a particular substance in schedule III or schedule IV, or particular preparations containing such substance, be prescribed or dispensed upon an official New York state prescription”, as the basis for his authority. Regarding the Interstate Commerce Clause, Axelrod foresees no discrimination against out-of-State doctors because the triplicate forms are available to any physician who orders them.
C. APPLICATION OF THE LAW TO THE CLAIMS OF THE PARTIES
"An administrative regulation, legislative in character, will be upheld as valid if it has a rational basis, that is, if it is not unreasonable, arbitrary or capricious”. (Matter of Levine v Whalen, 39 NY2d 510, 518 [1976]; Grossman v Baumgartner, 17 NY2d 345 [1966].) This is the standard which the regulation must meet to be upheld as constitutional. Generally, it is a very low standard giving the promulgating body much discretion and maintaining a very high level of judicial restraint. The party seeking to have the regulation overturned must show unequivocally that the regulation is completely without reason. The standard does not in any way require unanimity of opinion among experts in a particular area. In Pharmaceutical Mfrs. Assn. v Whalen (54 NY2d 486 [1981]), the court found that a difference of opinions among experts was insufficient to declare unconstitutional a regulation allowing generic brand drugs to be substituted for name brand ones. Weighing heavily in Axelrod’s favor in addition to the presumption of constitutionality is the fact that the regulation *783 does not prevent doctors from prescribing benzodiazepines just as they would have without the triplicate forms. The only physicians who may be affected are those that are currently making "bad faith” prescriptions knowing their patient either has no need for the sedatives or should receive another type of treatment.
Although neither side is entirely clear on the issue of refills, Axelrod has stated that a patient receiving these drugs needs only an initial examination under the triplicate system. This means that patients not falling into one of the four categories of exceptions will require a new prescription every 30 days. No medical examination is required but the patient will most likely have to visit the doctor’s office if only to be handed a new prescription. Although Doe argues that these more frequent visits constitute an unnecessary burden on patients, if the result is over-all better health care for the public this court can see no real harm done to the public.
Whalen v Roe (429 US 589 [1977]) considered a challenge to the imposition of triplicate prescriptions for schedule II drugs, in which it was argued unsuccessfully that the procedure constituted a violation of the patient’s right to privacy. As in Whalen, here the extent of disclosure is not substantially greater than before enactment of the regulation and the statute contains security measures to protect against indiscriminate disclosure of the patient information stored in computer files.
D. CONCLUSIONS OF LAW
Under Public Health Law § 3338, the Commissioner clearly has been given the authority to require schedule III and IV drugs be prescribed in triplicate. Controlled Substances Act § 3308 acts as the guiding principle for the Commissioner in making regulations "which in his judgment may be necessary or proper” to effectuate the purpose of the act to control and regulate substance abuse. (Public Health Law § 3308 [2].) The efforts of the Commissioner in opening the discussion of the regulation to include the input of any interested agencies disproves any unreasonable or arbitrary intentions alleged by the plaintiffs. The argument that the Commissioner bypassed the Drug Abuse Advisory Council is rejected; it is evident that the Commissioner sought the advice and recommendations of both DAAC and the Public Health Council as he may under his authority. The Public Health Council may recommend to *784 the Commissioner on any subject related to the preservation and improvement of the public health although it is limited to issuing regulations in the areas of sanitation under Public Health Law §225. The DAAC, on the other hand, has no statutory authority for issuing any rules or regulations. I find that the Commissioner fully complied procedurally with public health laws in promulgating 10 NYCRR 80.67.
Nor have the plaintiffs established any violation of constitutional rights regarding either the individual patient or as between the patient and doctor. As in Whalen v Roe (429 US 589 [1977], supra), the record-keeping function of the triplicate system is a reasonable exercise of the State’s broad police powers, and there is no basis for the belief that the State would improperly use the information. The challenged regulation will not disturb the privileged relationship between the doctor and patient nor will it reveal more information than the State must be legally entitled to know.
Summary judgment is the appropriate means for deciding this action for several reasons. The plaintiffs submitted numerous affidavits most of which were submitted in the same form in their motion for a preliminary injunction, in which the Court of Appeals found that they were unlikely to succeed on the merits of the case and so were denied injunctive relief (Doe v Axelrod, 73 NY2d 748). Both sides have submitted substantial amounts of scientific evidence representing a variety of positions. Medical evidence of this type is always changing and conclusions are not always unassailable. The court is not equipped to analyze the validity of scientific evidence and can only determine the constitutionality of the regulation based on the rational basis standard imposed by law. The court finds that the dispute between the parties in this action amounts to a difference among experts which is insufficient to declare the regulation unconstitutional.
Accordingly, the motion for summary judgment is granted for Axelrod, upholding regulation 10 NYCRR 80.67 as constitutional and the complaint is dismissed.