**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellant,**

**v.**

**STATE OF NEW YORK and City of New York, Defendants–Appellees.**

**No. 352, Docket 90–6160.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1990.

Decided March 12, 1991.

Gregory E. Gore, Washington, D.C. (Dorothy L. Nichols, Ann S. DuRoss, Colleen B. Bombardier, James G. Basham, Federal Deposit Ins. Corp., Stuart M. Gerson, Asst. Atty. Gen., Anthony J. Steinmeyer, Mark B. Stern, Department of Justice, Washington D.C., Joel B. Harris, David G. Greene, Thacher, Proffitt & Wood, New York City, of counsel), for plaintiff-appellant.

Rosalie Hronsky, New York City (Robert Abrams, Atty. Gen., Frederick L. Lieberman, New York City, of counsel), for defendant-appellee State of N.Y.

Anshel David, New York City (Victor A. Kovner, Corp. Counsel of the City of New York, Edith I. Spivack, Edward F.X. Hart, Stanley Buchsbaum, New York City, of counsel), for defendant-appellee City of New York.

Before ALTIMARI and MAHONEY, Circuit Judges, and GLASSER, District Judge.*

ALTIMARI, Circuit Judge:

Plaintiff-appellant the Federal Deposit Insurance Corporation ("FDIC") appeals from a judgment entered in the United States District Court for the Southern District of New York (John E. Sprizzo, *Judge*), denying its motion for summary judgment and granting defendants-appellees' motion for judgment on the pleadings. On appeal, the FDIC contends that the district court erred by determining that the action was barred by the Tax Injunction Act, 28 U.S.C. § 1341 (1988), the eleventh amendment and the FDIC's lack of standing. For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

In the Fall of 1982, Congress passed the Garn–St. Germain Depository Institutions Act, Pub.L. No. 97–320, 96 Stat. 1469 (1982) ("Garn Act"), the primary purpose of which was to assist financially troubled commercial banking institutions. Congress determined that one method of accomplishing this goal was to permit the FDIC to issue promissory notes to ailing banks in exchange for the banks' "net worth certificates." The net worth certificates would correspond with the promissory notes both in value and interest rate. *See* 12 U.S.C. § 1823(i) (1988). Although such a transaction could be viewed as purely a paper one, Congress believed that the exchange would "partially offset [participating banks'] current losses and shore up the net worth of qualified institutions." S.Rep. No. 536, 97th Cong., 2d Sess. 4, *reprinted in* 1982 U.S.Code Cong. & Admin.News 3054, 3063; *see also* S.Conf.Rep. No. 641, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Admin.News 3128, 3129. In other words, by issuing promissory notes to the banks, the FDIC would, in effect, be guaranteeing some of the banks' assets. The Garn Act also provided that a participating bank with outstanding net worth certificates would not be liable for state and local taxes levied on its deposits or on interest paid on those deposits. *See* 12 U.S.C. § 1823(i)(9).

In December 1982, the Bowery Savings Bank ("the Bowery") issued $58,700,000 in net worth certificates to the FDIC. Despite the Garn Act's prohibition against taxing interest payments of those banks that had issued net worth certificates, New York State ("State") and New York City ("City") taxed the interest paid on the Bowery's deposits for 1982. The State and City made similar assessments against other banks that had issued net worth certificates. The Bowery, as well as a number of other similarly situated banks, sought to obtain tax refunds from the State and City for the 1982 tax year. In 1983, the State refunded the Bowery approximately $1.8 million dollars in prepaid taxes for 1982. The City has not yet processed the Bow-

* The Honorable I. Leo Glasser, United States District Court for the Eastern District of New York, sitting by designation.

ery's claim, but it is now prepared to proceed with a hearing on the issue.

In August 1985, the FDIC and the Bowery entered into an Assistance Agreement ("Agreement"), that was designed to help the Bowery to remain solvent. The Agreement provided in pertinent part:

Bowery Bank ... hereby assign[s] ... to the FDIC any or all claims ... [which it] may have, against (i) any present or former officer ... and (ii) any underwriter of blanket Bonds of Bowery Bank ... or any other insurance policy of Bowery Bank ... and (iii) any others whose action or inaction may be related to any loss incurred by Bowery Bank....

Joint Appendix ("Jt. App.") at 259.

Two-and-a-half years after the FDIC entered into the Agreement, it brought the underlying action seeking a declaratory judgment that the City and the State had imposed taxes in contravention of the Garn Act's tax exemption provision, thereby violating the Supremacy Clause of the Constitution. The FDIC also sought an injunction prohibiting the City and the State from assessing such taxes on the Bowery and similarly situated banks, for the tax years from January 1, 1982 through December 31, 1984. Finally, pursuant to the Agreement, the FDIC sought to recover taxes that the Bowery paid to the City for 1982. The State brought a compulsory counterclaim against the FDIC, alleging that if the FDIC is "the assignee of the rights and liabilities of the Bowery," then it is liable for the Bowery's unpaid alternative minimum franchise taxes for the period of 1982 preceding the Bowery's issuance of net worth certificates. *See* Jt.App. at 37–38.

The district court, determining that it lacked subject matter jurisdiction, dismissed both the complaint and the counterclaim. *Federal Deposit Insurance Corp. v. New York*, 718 F.Supp. 191, 195 (S.D.N.Y.1989). The district court found that the Tax Injunction Act barred the FDIC from pursuing the action against the City and State in federal court. Additionally, it held that the eleventh amendment prohibited the FDIC from continuing the action against the State in federal court. Finally,

it concluded that the FDIC did not have the power to enforce the Garn Act and that it did not have a sufficient stake in the litigation to confer standing.

Approximately one week after the court's judgment was entered, Congress amended the Federal Deposit Insurance Act, *see* Federal Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (1989), to provide that the FDIC "in any capacity, shall be an agency of the United States for purposes of section 1345 of title 28, United States Code, without regard to whether the Corporation commenced the action." 12 U.S.C.A. § 1819(b)(1) (1989). Consequently, the FDIC moved to reargue the case, contending that the amendment cured any jurisdictional defect. The district court rejected this argument and denied the FDIC's motion. *See Federal Deposit Insurance Corp. v. New York*, 732 F.Supp. 26 (S.D.N.Y.1990). This appeal followed.

## DISCUSSION

■ The FDIC contends that the district court erred by determining that the Tax Injunction Act prohibited it from maintaining its action against the City and State in federal court. The Tax Injunction Act provides in pertinent part:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. An exception to the dictates of this Act arises when the United States initiates an action "to protect itself and its instrumentalities from unconstitutional state exactions." *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966); *see Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1639, 48 L.Ed.2d 96 (1976). In such cases, the government is permitted to pursue its action in federal court, notwithstanding the Tax Injunction Act.

The district court held that the FDIC could not invoke the federal instrumentali-

ties exception in this case, finding that the "rationale underlying the exception [to the Tax Injunction Act] makes it inapplicable where, as here, the federal instrumentality seeking the injunction is not the entity being taxed, and there is no burden upon either the United States or its alleged instrumentality resulting from that tax." *Federal Deposit Insurance Corp.*, 718 F.Supp. at 195 (footnote omitted). Because the allegedly unconstitutional tax was assessed against a commercial bank rather than against a federal instrumentality, the court concluded that the federal treasury could not be genuinely affected by this action. Accordingly, the court found that the federal instrumentality exception did not apply. The court also concluded that the FDIC may not be considered a federal instrumentality for purposes of the Tax Injunction Act. While we express no view as to the FDIC's status as a federal instrumentality, we agree with the district court's determination that the FDIC may not invoke the exception in this case.

The Tax Injunction Act, which " 'has its roots in equity practice,' " *Rosewell v. La-Salle National Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1234, 67 L.Ed.2d 464 (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976)), *reh'g denied*, 451 U.S. 1011, 101 S.Ct. 2349, 68 L.Ed.2d 864 (1981), "was promulgated in recognition of the imperative need of state sovereigns to administer their own fiscal operations without interference." *United States v. Anderson County*, 705 F.2d 184, 188 (6th Cir.), *cert. denied*, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 722 (1983); *see Ashton v. Cory*, 780 F.2d 816, 823 (9th Cir.1986) ("Congress was aware of the historical reluctance of federal courts to meddle in state fiscal operations and was mindful of the need to shield state revenue collection from potentially disruptive federal interference."); *see also Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071, 1074–78 (7th Cir.1978) (discussing the history of the Tax Injunction Act), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Essentially, the Tax Injunction Act ensures that a state can tax its own citizens without undue concern that

the federal government will hinder its operations. Like the Tax Injunction Act itself, the federal instrumentality exception to the Act is based on traditional principles of comity. This exception is an outgrowth of the basic policy set forth in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), that the federal government shall not be subject to taxation by the states. *See United States v. Michigan*, 851 F.2d 803, 805 (6th Cir.1988).

As the district court suggested, the policies behind both the Act and its exception lead to the conclusion that the FDIC may not invoke the government instrumentality exception in this case. Clearly the State and City's interest in taxing corporate entities without federal interference is the kind of interest that the Tax Injunction Act was designed to protect. Upon considering the FDIC's position in this suit, we cannot find that the purposes of the instrumentality exception would be served by allowing the FDIC to proceed with this action in federal court.

As previously discussed, the federal instrumentality exception was created to allow the government to shield itself "from unconstitutional state exactions." Assuming for purposes of this argument that the FDIC is a federal instrumentality with standing to sue, it nevertheless remains apparent that by bringing this suit, the FDIC was attempting to protect commercial lending institutions rather than the federal government. Indeed, the State and City's tax assessments against *banks* that have issued net worth certificates have at most a *de minimis* effect on the federal government. While the FDIC surely has some interest in ensuring that federal banking laws are enforced, this interest will be adequately protected if the suit, upon dismissal, is pursued in state court. *See, e.g., Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) ("Minimal respect for ... state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights.").

■ We also find unpersuasive the FDIC's claim that it may invoke the excep-

tion based on its particular interest in this suit as assignee of "claims related to any loss incurred by the Bowery," pursuant to the Agreement. *See* Jt.App. at 259. This assignment does not require the FDIC to *pay* the Bowery's taxes—it merely may entitle the FDIC to a portion of tax refunds to which the Bowery is entitled. It is questionable, however, whether the Agreement even encompasses tax claims. Nevertheless, if it does, the FDIC's financial interest in the Bowery's refunds would be minimal and wholly derivative of the Bowery's rights. Indeed, to allow the FDIC, as Bowery's assignee, to elude the Tax Injunction Act would be to confer upon the FDIC as assignee greater rights than its assignor possessed. This would contravene the fundamental principle that an assignee acquires from the assignor only those rights that the assignor enjoyed. *See Restatement (Second) of Contracts* § 336 (1986). Accordingly, the FDIC cannot show that the sovereignty of the federal government will be compromised by prohibiting this suit from proceeding in federal court.

The FDIC nevertheless argues that the Supreme Court's decision in *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), precludes a determination that the *government itself* must be "affected" by the exaction in order to trigger the instrumentalities exception to the Tax Injunction Act. In *Moe,* the Court held that the Tax Injunction Act did not bar a federal court from exercising jurisdiction over an Indian Tribe contesting state assessments as violating the Supremacy Clause of the United States Constitution. The Court premised its holding, in part, on the special relationship between the United States and the Tribe. Reasoning that the United States, as trustee of Indian affairs, "could have made the same attack on the State's assertion of taxing power as was in fact made by the [T]ribe," the Court concluded that the Tribe should "be accorded treatment similar to that of the United States had it sued on their behalf." *Id.* at 474, 96 S.Ct. at 1642; *see United States v. Arlington County,* 326 F.2d 929 (4th Cir.1964). The Court also stressed that the legislative history underlying 28 U.S.C. § 1362, which

conferred federal jurisdiction over matters involving Indian Tribes, indicated that Congress intended "a [T]ribe's access to federal court to litigate a matter arising 'under the Constitution, laws, or treaties' [to] be at least in some respects as broad as that of the United States suing as the [T]ribe's trustee." *Id.,* 425 U.S. at 473, 96 S.Ct. at 1641. Consequently, the Court held that the Tax Injunction Act did not preclude the Tribe from initiating a lawsuit in federal court to enjoin state tax assessments. Based on *Moe,* the FDIC argues that the federal instrumentality exception may apply even if the instrumentality itself is not the entity that is taxed. Thus, according to the FDIC, it, like the Indian Tribe in *Moe,* should be permitted to initiate this action in federal court, notwithstanding the Tax Injunction Act.

Courts have generally read *Moe* narrowly. *See, e.g., MRT Exploration Co. v. McNamara,* 731 F.2d 260, 265 (5th Cir. 1984) ("*Moe* holding was clearly based on the existence of section 1362."); *Dillon v. Montana,* 634 F.2d 463, 465 (9th Cir.1980) (based on *Moe,* court reasoned that federal instrumentality exception was not available to individual indians); *National Carriers' Conference Committee v. Heffernan,* 440 F.Supp. 1280, 1283 (D.Conn.1977) (Newman, *J.*) (*Moe* expanded the instrumentality exception "to reach an action brought by a private party whom Congress intended to have the same access to federal court as that available to the United States."). We agree that *Moe* should not be construed as having broadly expanded the federal instrumentality exception and, accordingly, we reject the FDIC's argument on this point. In this case, the connection between the government and the parties against whom the tax is assessed—commercial banking institutions—is far more tenuous than that between the Tribe and the United States in *Moe.* The FDIC is not in any sense a "trustee" of commercial banks. Indeed, the FDIC is primarily an "insurance company" that was created to protect depositors. *See First State Bank v. United States,* 599 F.2d 558, 562–63 (3d Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *Federal Deposit Insurance Corp. v. Godshall,* 558 F.2d

220, 221 n. 3 (4th Cir.1977). Although the FDIC's activities may benefit commercial lending institutions, its basic purpose is to insure depositors' assets.

If we were to allow the FDIC to invoke the federal instrumentality exception to the Tax Injunction Act in this case, we would be starting down a road leading toward use of the exception by any taxpayer whose operations were affected by congressional regulation. Taking this path would result in the erosion of the exception altogether. Therefore, we find that the Tax Injunction Act precludes the FDIC from pursuing this action in federal court.

We stress that our holding in this case is a narrow one. Since the district court's opinion may be affirmed on the basis of the Tax Injunction Act, we express no view as to the court's determination that the FDIC is not a federal instrumentality and that it is not entitled to invoke the federal exception to the eleventh amendment. Nor do we rule on the FDIC's standing to pursue this action.

## CONCLUSION

Based on the foregoing, we affirm the district court's judgment dismissing FDIC's complaint and denying FDIC's motion for summary judgment.