**BIRDVILLE INDEPENDENT
SCHOOL DISTRICT**

v.

**HURST ASSOCIATES, et al.**

**No. 4:89–CV–595–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Oct. 2, 1992.

Kent M. Rider, Calame, Lineberger & Graham, Austin, Tex., Gary B. Bennett, Calame Lineberger & Graham, Fort Worth, Tex., for plaintiff.

A. Rick Hightower, McGinnis, Lochridge & Kilgore, Austin, Tex., for defendant Gen. Elec. Co.

Craig A. Bernstein, Kuehne, Moore & Ross, Dallas, Tex., for defendant Hurst Associates.

Keith David Calcote, Haynes & Boone, Fort Worth, Tex., for defendant Resolution Trust Corp. as Receiver for San Jacinto Savings Ass'n, F.A., for the FSLIC as receiver for Capitol City Sav. Ass'n.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DISMISSING DEFENDANT HURST'S COUNTERCLAIM, AND RENDERING ALL OTHER PENDING MOTIONS MOOT

MEANS, District Judge.

Pending before the Court is Plaintiff's motion for summary judgment, which was filed in the·above-styled and numbered cause on November 8, 1991. Related to this motion is Plaintiff's December 10, 1991 motion to strike the response of defendant Hurst Associates ("Hurst") to Plaintiff's motion for summary judgment. After careful consideration of these motions, the Court finds that Plaintiff's motion for summary judgment should be granted, and its motion to strike should be denied. The Court further finds that defendant Hurst's counterclaim, which was filed on May 10, 1991, should be dismissed pursuant to Rule 3.1(h) of the Local Rules of the Northern District of Texas.

Plaintiff originally brought this suit for delinquent ad valorem taxes in the 236th Judicial District Court of Tarrant County, Texas. Plaintiff alleges that defendant Hurst is the owner of properties on which delinquent taxes are owed and, consequently, that Hurst is liable for payment of the taxes. Furthermore, Plaintiff alleges that, because Hurst has failed to pay the taxes, the properties are subject to foreclosure and sale. The other defendants in this cause are lienholders on the properties and, as such, are not liable for the delinquent taxes. Subsequent to the filing of Plaintiff's petition, the Federal Savings and Loan Insurance Corporation ("FSLIC") became the receiver for defendant Capitol City Savings Association ("Capitol"), a mortgage lienholder on the properties at issue, and removed this cause to this Court pursuant to 12 U.S.C. § 1730(k)(1)(B) and 28 U.S.C. §§ 1331 and 1441(a).[1] The Reso-

---

1. The FSLIC indicated in its notice of removal that it was appointed as receiver for Capitol by the Federal Home Loan Bank Board on April 5, 1989, and therefore became a lienholder on the property in place of Capitol. Plaintiff's motion for summary judgment and the Reynolds affidavit attached thereto indicate that there was no record of a transfer of Capitol's lien and securi-

lution Trust Corporation ("RTC") was later substituted as the receiver for Capitol in place of the FSLIC.

After careful review of this matter, the Court finds that Plaintiff is entitled to judgment against Hurst. Under Texas law, a tax lien attaches to real property in Texas on January 1st of every year to secure the payment of all ad valorem taxes owed on the property. *See* TEX.TAX CODE ANN. § 32.01 (West Supp.1992). The pleadings on file in this cause and the evidence submitted in support of Plaintiff's motion for summary judgment prove that Hurst is the owner of the properties at issue in this suit and has become delinquent in the payment of ad valorem taxes assessed against the properties. As a result, Plaintiff is entitled to seek foreclosure of its tax liens on the properties. TEX.TAX CODE ANN. § 33.41(a) (West 1982). Because Hurst has failed to submit any countering evidence raising a genuine issue of material fact requiring a trial, summary judgment against Hurst will be granted.

█ Hurst's response to Plaintiff's motion for summary judgment does not argue the merits of Plaintiff's motion but instead attacks the admissibility of its supporting affidavits. Plaintiff attached to its motion the affidavit of Howard Reynolds, the president of a title company, to show that Hurst owns the properties upon which the delinquent taxes are owed. Hurst objects that Reynolds's affidavit is not based on personal knowledge, is thus hearsay, and is based on records not properly authenticated. Reynolds specifically states in his affidavit, however, that he has personal knowledge of every statement contained in it and that the Tarrant County, Texas, deed records show that Hurst owns the properties in question. Reynolds attached copies of those records to his affidavit and swore that they are true, complete, and correct. *See* FED.R.CIV.P. 56(e).

Hurst complains, however, that the records attached to the Reynolds affidavit are not properly authenticated pursuant to FED.R.EVID. 902(4), which governs the self-authentication of public records. Hurst's complaint lacks merit, however, because the records are properly authenticated in accordance with FED.R.EVID. 901(b)(7) by Reynolds's affidavit that the attachments are accurate copies of records maintained by the Tarrant County Clerk. The county clerk is authorized and required by Texas law to keep such records. *See* TEX.PROP. CODE § 11.004(a) (West Supp.1992). Consequently, the records are properly authenticated pursuant to Rule 901(b)(7).

Furthermore, Plaintiff's entitlement to judgment against Hurst does not depend upon the Reynolds affidavit. While Plaintiff submitted the affidavit to prove that Hurst owns the properties that are the subject of this suit, ownership is not at issue: Hurst admitted ownership in its original answer and counterclaim. The pleadings in this cause, on which Plaintiff is entitled to rely in support of its motion for summary judgment, establish, without help from Reynolds's affidavit, that Hurst owns the properties upon which the delinquent taxes are owed. *See* FED.R.CIV.P. 56(c).

█ Defendant Hurst also complains about the exhibits attached to the affidavit of Philip Ferguson. Ferguson is the tax assessor-collector for the Birdville Independent School District, and certified copies of the tax records on Hurst's properties are attached to Ferguson's affidavit. Hurst argues that these exhibits contain insufficient descriptions of the properties upon which delinquent taxes are owed, and thus are also insufficient to prove that Hurst owns those properties. Again, Hurst admitted in its counterclaim that it owns the subject properties and describes them in a manner that is virtually identical to the

ty interest created by the deed of trust as of November 1, 1991, a few days before Plaintiff's motion for summary judgment was filed. To the extent that these statements raise any question about whether the FSLIC is now the holder of Capitol's lien, federal regulations provide that, once appointed, "a receiver shall, *without*

*further action,* succeed to the rights, titles, powers, and privileges of the association...." 12 C.F.R. § 547.7 (1989). Plaintiff has not alleged that the FSLIC was not actually appointed as Capitol's receiver. Therefore, the FSLIC became the lienholder in place of Capitol by operation of law when it became Capitol's receiver.

description of the properties contained in the Ferguson affidavit attachments. The Court concludes that Hurst's response to Plaintiff's motion for summary judgment lacks merit, as it attempts to create issues of material fact regarding matters that have already been established by Hurst's admissions in its counterclaim.

The apparent contradictions between Hurst's counterclaim and its response to Plaintiff's motion for summary judgment prompted Plaintiff to file a motion to strike Hurst's response. Hurst's response, in turn, to Plaintiff's motion to strike insists that "a [m]otion to [s]trike is proper only when there is some jurisdictional or fundamental defect in a pleading which renders it incompetent or improper for its intended purpose," but cites no authority. Hurst argues that its response to Plaintiff's motion for summary judgment merely points out deficiencies in Plaintiff's summary judgment proof and does not contain a jurisdictional or fundamental defect that warrants the drastic remedy of striking. Hurst believes that Plaintiff's argument regarding the inconsistency of Hurst's pleadings should instead "bear upon the weight to be given Defendant's [r]esponse, not the propriety of its filing." Without passing on the question of whether Hurst's response could appropriately be stricken, the Court declines to do so. The Court finds, however, that Hurst's response to Plaintiff's motion for summary judgment is in fact inconsistent with its counterclaim, and that the response therefore lacks merit.

As previously mentioned, Hurst filed a counterclaim along with its answer to Plaintiff's complaint on May 10, 1991. Pursuant to FED.R.CIV.P. 12(a), Plaintiff was required to file a reply within twenty days of service of defendant Hurst's answer and counterclaim. Plaintiff failed to file the reply, and was technically in default. Nevertheless, as of the date of this order, Hurst has failed to move for default judgment. Consequently, the Court finds that Hurst's counterclaim should be dismissed pursuant to Rule 3.1(h) of the Local Rules of the Northern District of Texas. All matters having been resolved in its favor,

Plaintiff is entitled to judgment against Hurst for the delinquent taxes.

■ Plaintiff also seeks judicial foreclosure of its statutory tax lien on Hurst's properties to recover for the unpaid taxes due on the property. Other than Plaintiff, the only lienholders remaining in this suit are the RTC, as receiver for Capitol Savings Association, and General Electric. General Electric did not respond to Plaintiff's motion for summary judgment, filing instead, on March 9, 1992, a stipulation in which it agreed with Plaintiff that its liens are inferior to Plaintiff's. They further agreed that, in the event that Plaintiff is granted judicial foreclosure of its tax liens on Hurst's properties, General Electric's liens will be extinguished. Thus, the only remaining questions are (1) whether the RTC's holding, as receiver for Capitol, of a mortgage lien on the property bars Plaintiff from foreclosing its tax lien, (2) if not, whether Plaintiff must protect the RTC's lien, and (3) whether Plaintiff may assess penalties and interest on the delinquent taxes when it forecloses on the properties.

Section 32.05 of the Texas Tax Code provides, in pertinent part, that

> a tax lien provided by this chapter takes priority over the claim of any creditor of a person whose property is encumbered by the lien and over the claim of any holder of a lien on property encumbered by the tax lien, whether or not the debt or lien existed before attachment of the tax lien.

TEX.TAX CODE ANN. § 32.05(b) (West 1982). Thus, if Capitol had not failed and had remained the lienholder on the property, there is no question that, under Texas law, its lien would be subordinate to Plaintiff's tax liens. The question currently before the Court, then, is whether the RTC's appointment as Capitol's receiver and its assumption of Capitol's lien mandates a different result.

Plaintiff argues that even when liens of federal agencies are involved, courts look to the law of the state in which the property is located to determine the priority of competing liens. In support of this conten-

tion, Plaintiff cites *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), in which the Supreme Court adopted "as federal law state law governing the divestiture of federal tax liens, except to the extent that Congress may have entered the field." *Id.* at 241, 80 S.Ct. at 1111. This Court discerns no reason to treat a consensual mortgage lien held by an agency of the federal government in any higher esteem than the federal tax lien in *Brosnan*. Thus, if Texas state law applies, each of Plaintiff's tax liens are entitled to priority over the RTC's lien pursuant to section 32.05(b). The RTC argues, however, that *Brosnan* is inapplicable to this case, and that when federal property interests are involved, lien priority is determined by federal law. Even so, federal law regarding lien priority provides that, unless Congress has provided otherwise, first in time is first in right. *See Texas Commerce Bank–Fort Worth, N.A. v. United States*, 896 F.2d 152, 161 (5th Cir.1990) (stating that, when a third party claims a lien interest against property on which the federal government also holds a tax lien, "the basic priority rule of 'first in time, first in right' controls, unless Congress has created a different priority rule to govern the particular situation"). Plaintiff's first tax lien attached on January 1, 1987, which was prior to the creation of the mortgage lien that is now held by the RTC. Consequently, at least one of Plaintiff's tax liens has priority over the RTC's lien pursuant to both federal and Texas law. Therefore, unless Congress has "provided otherwise," Plaintiff is the senior lienholder and may extinguish the RTC's lien by foreclosing its lien on Hurst's property.

The RTC argues that Congress "provided otherwise" when it enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 1989 U.S.C.C.A.N. (103 Stat. 183) 86 (codified as amended in scattered sections of 12 U.S.C.). Initially, the RTC argues that section 15(b) of FIRREA, 12 U.S.C.A. § 1825(b) (West 1989), bars foreclosure on Hurst's property due to the RTC's status as a lienholder on the property at issue.[2] Section 15(b)(2) provides that "[n]o property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation." 12 U.S.C.A. § 1825(b)(2) (West 1989). The RTC argues that permitting Plaintiff to foreclose on Hurst's properties would eliminate the RTC's interest, which the RTC argues is inconsistent with section 15(b)(2). Alternatively, the RTC claims that various other provisions of FIRREA prevent Plaintiff from foreclosing on Hurst's properties. Section 11(d)(13)(C) of FIRREA provides that "[n]o attachment or execution may issue by any court upon assets in the possession of the receiver." 12 U.S.C.A. § 1821(d)(13)(C) (West 1989). The RTC also points to section 11(c)(2)(C) and 11(j) as evidence of Congress's intent that local taxing authorities not be allowed to foreclose on property for which the RTC, as receiver, holds a mortgage lien. *See* 12 U.S.C.A. § 1821(c)(2)(C) (West 1989); 12 U.S.C.A. § 1821(j) (West 1989).

The Court will first address the RTC's argument that section 15(b)(2) of FIRREA bars Plaintiff from foreclosing on Hurst's properties. In *Irving Independent School District v. Packard Properties, Ltd*, 762 F.Supp. 699 (N.D.Tex.1991), *aff'd*, 970 F.2d 58, 66 (5th Cir.1992), the FDIC presented

---

**2.** By its terms, section 15(b) of FIRREA applies to the Federal Deposit Insurance Corporation. 12 U.S.C.A. § 1825(b) (West 1989). Pursuant to 12 U.S.C. § 1441a(b)(4), the RTC has the same powers and rights to carry out its duties with respect to institutions for which it acts as receiver as the FDIC has under sections 11, 12, and 13 of FIRREA. *See* 12 U.S.C.A. § 1441a(b)(4) (West Supp.1992). Section 11(c)(2)(B) of FIRREA provides that, when the FDIC acts as a receiver of a federal depository institution, it "shall have any other power conferred on or any duty ... imposed on a conservator or receiver for any [f]ederal depository institution under any other provision of law." 12 U.S.C.A. § 1821(c)(2)(B) (West 1989). Because the RTC is acting in its capacity as receiver of Capitol, a federal depository institution, and because section 11 of FIRREA permits the RTC, through 12 U.S.C. § 1441a(b)(4), to exercise the same powers conferred on any other receiver of a federal depository institution, section 15(b) of FIRREA applies to the RTC.

similar arguments to Judge Fitzwater. In that case, the FSLIC became a mortgage lienholder on the property at issue on November 19, 1987, when Vernon Savings and Loan Association, F.S.A. ("Vernon"), failed and the FSLIC became its receiver. *Id.* at 701. On January 8, 1988, the FSLIC foreclosed on the property and then purchased it at trustee's sale. *Id.* The Irving Independent School District (Irving) brought suit to recover unpaid ad valorem taxes for the years 1986–1990. *Id.* at 702. The FDIC, after being substituted for the FSLIC pursuant to FIRREA, conceded that it was personally liable for taxes for the years 1989 and 1990 because it owned the property on January 1st of each of those years. *Id.; see also* Tex.Tax Code Ann. § 32.07(a) (West 1982) (providing that "property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed," and that the obligation is not relieved merely because the person no longer owns the property). The FDIC argued, however, that pursuant to section 15(b)(2) of FIRREA, any tax liens that arose prior to the FSLIC's ownership of the property either did not attach to the property or were extinguished by the commencement of its receivership over Vernon. *Id.* at 701. The Court disagreed, holding that section 15(b)(2) of FIRREA did not

> prevent involuntary liens from attaching to real property prior to when the FDIC begins 'acting as receiver.' Essentially, the statute grants the FDIC as receiver a safe harbor against involuntary tax and other liens while it holds property. But as in the case of other assets it acquires upon the failure of a financial institution ... the FDIC takes each asset in its burdened condition. Its inability to market the asset represents but one aspect of the grim reality that faces the FDIC upon the failure of a financial institution.

*Id.* at 703. Thus, the Court concluded that liens for unpaid taxes, penalties, interest, and collection costs attached to the property at issue for the years 1986–88, and although section 15(b)(2) prevented Plaintiff from foreclosing on the property while the

FDIC was its owner, Plaintiff could enforce its liens once the FDIC's ownership terminated. *Id.*

Significantly, in *Irving* Judge Fitzwater held that an involuntary tax lien attached to the property on January 1, 1988, when the FSLIC was merely a mortgage lienholder—not yet owner through foreclosure. Thus, section 15(b)(2)'s proscription against involuntary liens attaching to "property of the Corporation" does not prevent a local tax lien from attaching to property on which the FSLIC is a mortgage lienholder. It follows that neither does section 15(b)(2) prevent *foreclosure* on property on which the RTC is a lienholder. This finding is consistent with the express language of the statute, which states that "no property of the Corporation" shall be subjected to foreclosure. 12 U.S.C.A. § 1825(b)(2). As the RTC is merely a lienholder, it's obvious that the real estate on which Plaintiff seeks foreclosure is not "property of the Corporation."

The RTC also argues that section 11(d)(13)(C) of FIRREA, which prevents the issuance of attachment or execution on assets in the possession of the RTC, bars Plaintiff from foreclosing on the property. *See* 12 U.S.C.A. § 1821(d)(13)(C) (West 1989). The RTC cites no direct authority for this position, referring instead to various Texas court cases holding that "execution" includes an order of sale of property. *See Ex Parte Boniface*, 646 S.W.2d 333, 334 (Tex.Civ.App.—Austin 1983, no writ) (citing *Durham v. Scrivener*, 228 S.W. 282 (Tex.Civ.App.—Austin 1920, no writ) (stating that "the term 'execution' applies to all process issued to carry into effect the final judgment of a court"). The RTC misses the point. Plaintiff is not attempting to execute on assets in the possession of the RTC. Rather, by foreclosing on Hurst's property pursuant to the judgment entered by this Court, Plaintiff would be executing on assets owned and possessed by Hurst. The RTC does not allege that it possesses the real property in question, arguing instead that execution against the real property would also constitute execution against the RTC's lien. Although Plain-

tiff's execution against Hurst's real property would adversely affect the RTC's lien rights, it is not tantamount to executing on "assets in the possession of the RTC." The Court simply cannot conclude that section 11(d)(13)(C) was intended to forestall execution on property as to which the RTC is merely a junior lienholder. Accordingly, the Court rejects the RTC's argument that section 11(d)(13)(C) bars foreclosure on Hurst's property.

■ The RTC bases its final argument that FIRREA bars Plaintiff's foreclosure on two provisions regarding the RTC's powers as receiver for Capitol. Section 11(c)(2)(C) of FIRREA provides that, "[w]hen acting as conservator or receiver ... the Corporation shall not be subject to the direction or supervision of any other agency or department of the United States or any State in the exercise of the Corporation's rights, powers, and privileges." 12 U.S.C.A. § 1821(c)(2)(C) (West 1989). Section 11(j) prohibits courts from taking "any action ... to restrain or affect the exercise of powers or functions of the Corporation as conservator or receiver." 12 U.S.C.A. § 1821(j) (West 1989). The RTC argues that these provisions show Congress's intent that taxing authorities not be allowed to foreclose on mortgage interests held by the RTC as receiver, since foreclosure would interfere with the RTC's power to conserve and preserve the assets it acquires from failed institutions. The Court believes, however, that the RTC reads more into these provisions than was intended. If Congress intended these provisions to thwart foreclosure on property not owned by the RTC but on which it merely has an inferior lien, Congress surely would have been more specific. Prior to its failure, Capitol held a lien inferior to Plaintiff's and, had Plaintiff foreclosed, Capitol's lien would have been extinguished. These two provisions of FIRREA are simply too indefinite for this Court to infer from them that Congress intended that the RTC, upon becoming Capitol's receiver, have a greater encumbrance upon Hurst's property than that Hurst originally granted to Capitol. Consequently, the Court concludes that neither section 11(c)(2)(C) nor

11(j) of FIRREA prevent Plaintiff from foreclosing on Hurst's properties.

■ Finally, the RTC argues that, even if Plaintiff can foreclose on Hurst's properties, the RTC may not be subjected to the penalties and interest Plaintiff claims. In support of this contention, the RTC cites section 15(b)(3) of FIRREA, which provides that "[t]he Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." 12 U.S.C.A. § 1825(b)(3) (West 1989). Apparently, the RTC believes that this statute is intended to prevent Plaintiff from assessing penalties and interest against the amount of delinquent taxes owed on defendant Hurst's property. The Court disagrees. The plain language of the statute merely states that the *Corporation* shall not be held liable for penalties and interest. Plaintiff is not attempting to hold the RTC liable for the payment of any penalties and interest. Plaintiff admits that the RTC, as a lienholder, is not liable for the payment of the tax debt, including any related assessments. The Court recognizes that the assessment of penalties and interest on the delinquent taxes owed by Hurst and Plaintiff's foreclosure on Hurst's property will adversely impact the RTC's lien. Nevertheless, section 15(b)(3)'s language merely provides that the RTC not be held liable for penalties and interest. It does not preclude the assessment of penalties and interest for unpaid property taxes on property as to which the RTC is a mere lienholder. *See Irving,* 762 F.Supp. at 703 (holding that a lien for unpaid taxes, penalties, interest, and collection costs attached to property on January 1, 1988, a time in which the FDIC was a lienholder on the property at issue); *cf. Carrollton–Farmers Branch Independent School District v. Federal Deposit Insurance Corporation,* 776 F.Supp. 1180, 1186 (N.D.Tex. 1991) (stating that, "[b]y its plain terms, § 1825(b)(3) shields the FDIC–Receiver from personal liability for penalties, but does not reach further to dissolve pre-re-

ceivership penalties that, by virtue of market considerations, the receivership estate may be forced to absorb"), *aff'd*, 970 F.2d 58, 66 (5th Cir.1992).

The Court concludes that FIRREA does not preclude the operation of either section 32.05 of the Texas Tax Code or the basic priority rule of federal law in the situation presented here. Thus, Plaintiff may enforce its tax liens by foreclosing on defendant Hurst's property, and, because at least one of Plaintiff's liens is superior to that of the RTC, Plaintiff's foreclosure on the property will extinguish the RTC's lien.

It is, therefore, ORDERED that Plaintiff's November 8, 1991 motion for summary judgment should be and is hereby GRANTED.

It is further ORDERED that Plaintiff's December 10, 1991 motion to strike defendant Hurst's response to Plaintiff's motion for summary judgment should be and is hereby DENIED.

It is further ORDERED that defendant Hurst's May 10, 1991 counterclaim should be and is hereby DISMISSED pursuant to Local Rule 3.1(h).

It is further ORDERED that, no later than 4:30 p.m. on October 15, 1992, Plaintiff shall file a supplemental affidavit of the tax assessor-collector for the Birdville Independent School District setting forth the amount owed by defendant Hurst on the properties at issue in this suit for delinquent taxes, penalties, interest, and statutory costs through October 30, 1992.

It is further ORDERED that, no later than 4:30 p.m. on October 15, 1992, Plaintiff shall submit to the Court a proposed final judgment and order of sale.

It is further ORDERED that all other motions pending in this cause should be and are hereby RENDERED MOOT.

SO ORDERED.