

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-1995

# Simon v Cebrick

Precedential or Non-Precedential:

Docket 94-5429

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Simon v Cebrick" (1995). *1995 Decisions.* Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 94-5429
_____

BETTY SIMON, TRUSTEE,

Appellant

v.

JANET CEBRICK; RONALD CEBRICK; STATE OF NEW JERSEY;
PARLIAMENT LEASING CORPORATION; CLAYTON N. STERLING
ASSOCIATES, INC., A N.J. CORP.; WILLIAM T. HIERING, P.C.;
RAYMOND A. BIRCHLER, REALTOR; GENERAL MEDICAL NEW JERSEY;
DONALD B. WHITEMAN, d/b/a DONALD B. WHITEMAN AGENCY;
AFCO CREDIT CORPORATION; MARTA DITCHKUS; FEDERAL DEPOSIT
INSURANCE CORPORATION, AS RECEIVER FOR THE FIRST
NATIONAL BANK OF TOMS RIVER; UNKNOWN OWNERS, UNKNOWN CLAIMANTS,
their heirs, devisees and personal representatives, and
their or any of their successors in right, title
and interest.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 93-cv-04616)
_____

Argued: Thursday, March 9, 1995

BEFORE:  HUTCHINSON, ALITO
and SAROKIN, Circuit Judges
_____

Opinion filed April 26, 1995)

BEN J. SLAVITT (Argued)
RONALD G. SCHECTER
Slavitt, Fish & Cowen, P.A.
17 Academy Street, Suite 415
Newark, New Jersey 07102
Attorneys for Appellant

ANN S. DUROSS

Assistant General Counsel
RICHARD J. OSTERMAN, JR.
Senior Counsel
E. WHITNEY DRAKE (Argued)
Special Counsel
Federal Deposit Insurance
Corporation
550 17th Street, N.W.
Washington, D.C. 20429

JEANETTE F. FRANKENBERG
2227 U.S. Highway One #229
North Brunswick, New Jersey 08902
Attorneys for Appellee FDIC

—————————

OPINION OF THE COURT

—————————

SAROKIN, Circuit Judge:

The question presented is whether mortgages held by the FDIC can be extinguished without the FDIC's consent through foreclosure of plaintiff's superior real estate tax liens. We hold that the district court correctly interpreted and applied 12 U.S.C. § 1825(b)(2) to protect the FDIC's lien interest from foreclosure. Additionally, we hold that the Tax Injunction Act does not divest the district court of jurisdiction over this action and that the delay in the enforcement of plaintiff's tax lien does not presently rise to the level of a compensable taking. Accordingly, we affirm the district court's judgment.

I.

On October 26, 1990, Betty Simon ("plaintiff") purchased the tax title to a parcel of New Jersey real estate (hereinafter the "Cebrick Property") by paying the sum of $4,801.37. Plaintiff subsequently purchased tax lien certificates for 1991, 1992, and 1993 for that property. At the time plaintiff purchased the tax lien certificates, the First National Bank of Toms River, New Jersey (the "Bank") held mortgage liens against the Cebrick Property. The loans were made respectively in March 1987 for $200,000 and in August 1987 for $330,000. On May 22, 1991, the Comptroller of Currency closed the Bank. The Bank's assets were taken into receivership by the Federal Deposit Insurance Corporation (the "FDIC"). The FDIC is now the holder of the mortgages at issue in its capacity as receiver for the Bank. In 1993, the market value of the Cebrick Property, based upon plaintiff's valuation, was $251,328.54.

Under New Jersey law, plaintiff's tax liens are superior in right to the FDIC's mortgage liens. N.J.S.A. 54:5-9. Plaintiff requested that the FDIC consent to foreclosure of its lien interest in the Cebrick Property, and the FDIC refused. Thereafter, plaintiff filed foreclosure proceedings in state court based upon the tax sale certificates. The FDIC removed the case to federal court.

The district court granted the FDIC's 12(b)(6) motion for failure to state a claim and remanded the case to the state court for proceedings consistent with the dismissal of the FDIC.

Plaintiff filed a timely notice of appeal. The district court had subject matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(2). We have jurisdiction over the district court's final order pursuant to 28 U.S.C. § 1291.

## II.

We exercise plenary review over a district court's order dismissing a complaint under Fed. R. Civ. Proc. 12(b)(6) for failure to state a claim. Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993); Ditri v. Coldwell Banker Residential Affiliates, 954 F.2d 869, 871 (3d Cir. 1992). The test for reviewing a 12(b)(6) motion is whether under any reasonable reading of the pleadings, plaintiff may be entitled to relief. Holder v. City of Allentown, 987 F.2d 188, 193 (3d Cir. 1993). When reviewing such an order, we must accept as true the factual allegations in the complaint. D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1367 (3d Cir. 1992), cert. denied, U.S. ___, 113 S.Ct. 1045 (1993); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

We have plenary review over the district court's legal conclusions, including the proper interpretation of a statute. Moody v. Sec. Pac. Business Credit, 971 F.2d 1056, 1063 (3d Cir. 1992); Manor Care, Inc. v. Yaskin, 950 F.2d 122, 124 (3d Cir. 1991); Juzwin v. Asbestos Corp., 900 F.2d 686, 689 (3d Cir.), cert. denied, 498 U.S. 896 (1990).

## III.

In the instant case, the FDIC does not contest the municipality's authority to assess taxes against real property in which it has an interest, nor does it contest the superiority of plaintiff's tax liens over its mortgages.  See 12 U.S.C. § 1825(b)(1) (providing that the Corporation shall be exempt from all state and local taxation, "except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as real property is taxed"); N.J.S.A. 54:5-9 (declaring the superiority of municipal liens).  The FDIC maintains, however, that the express language of 12 U.S.C. § 1825(b)(2) precludes plaintiff from extinguishing the FDIC's mortgages through foreclosure of the tax liens without its consent.

Enacted as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), section 1825(b)(2) provides:

> No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

12 U.S.C. § 1825(b)(2).  The district court in the instant case concluded that, in light of the clear language of section 1825(b)(2), the FDIC's mortgages must be protected from extinguishment through foreclosure of plaintiff's tax liens.  Accordingly, the district court granted the FDIC's motion to dismiss.  We agree.

On appeal, plaintiff contends that the district court erred by construing the language of § 1825(b)(2) literally and in isolation from the remainder of the statute. Relying on two additional sections of FIRREA, plaintiff argues that the FDIC has 180 days in which to choose one of the following alternatives: (1) abandon its interest in the property, (2) consent to be foreclosed, or (3) pay the tax liens.

Long before the enactment of § 1825(b)(2), the Supreme Court addressed the question of whether cities had the right to assess taxes and enforce collection by selling properties in which the federal government held a mortgage. See New Brunswick v. United States, 276 U.S. 547 (1928). In New Brunswick, the Supreme Court determined that a city could lawfully assess taxes against the owners of the property and enforce the collection of delinquent taxes by selling the owner's interest in the property. 276 U.S. at 555-56. The Court held, however, that any sale of the property must protect the federal mortgage. 276 U.S. at 556 (citing Clallam County v. United States, 263 U.S. 341 (1923)).

More recently, the Ninth Circuit in Rust v. Johnson, 597 F.2d 174 (9th Cir.), cert. denied, 444 U.S. 964 (1979), relying on New Brunswick, held that the Supremacy Clause prevented the City of Los Angeles from foreclosing a special assessment tax lien against property in which the Federal National Mortgage Association held a mortgage. In the course of concluding that the city's lien could not be enforced without protecting the

federal interest, the court held that the mortgage interest of federal instrumentalities should be treated the same as other property of the United States.  597 F.2d at 177.

When a court interprets a statute, "[i]t is not lightly to be assumed that Congress intended to depart from a long established policy."  United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351, 1355 (1992) (quoting Robertson v. Railroad Labor Board, 268 U.S. 619 (1925)).  The New Brunswick line of cases exhibits a policy to protect federal mortgage interests from extinguishment through foreclosure of municipal tax liens.  The express language of 12 U.S.C. § 1825(b)(2) evidences Congress' intent to protect the property interests of the FDIC, in particular, from foreclosure without their consent.

Other circuits have similarly interpreted and applied 12 U.S.C. § 1825(b)(2).  In Matagorda County v. Russell Law, 19 F.3d 215, 222 (5th Cir. 1994), the Fifth Circuit, relying on the express language of § 1825(b)(2), held that local taxing units could not foreclose the lien interests of the FDIC without the consent of the FDIC.  See also Donna Independent School Dist. v. Balli, 21 F.3d 100, 101 (5th Cir. 1994) (holding that taxing units could not foreclose on property subject to FDIC liens without FDIC's consent); F.D.I.C. v. Lowery, 12 F.3d 995 (10th Cir. 1993) (relying on the "unassailably clear language" of 12 U.S.C. § 1825(b)(2), the Tenth Circuit held that local taxing authorities could not sell property owned by FDIC to satisfy tax

liens without FDIC's consent, even though tax liens attached prior to FDIC's acquisition of property), cert. denied, ___ U.S. ___ , 114 S.Ct. 2674 (1994). Like the district court in the instant case, we also find the reasoning in Matagorda persuasive.

Plaintiff in the instant case relies on Birdville Independent School v. Hurst Assoc., 806 F. Supp. 122 (N.D. Tex. 1992), in which a district court held that the phrase "property of the Corporation" under § 1825(b)(2) did not include lien interests of the Resolution Trust Corporation. However, the Fifth Circuit effectively overruled Birdville in Matagorda. See Matagorda, 19 F.3d at 221 (citing Birdville, 806 F. Supp. at 127). In Matagorda, the Fifth Circuit concluded that the lien interests held by the FDIC were clearly "property of the Corporation" as contemplated by the statute because "[i]t has been settled federal law since 1928 that in the context addressed herein, 'property' embraces both fee and lien interests." 19 F.3d 221 (citing Clallam County, supra; New Brunswick, supra; Rust v. Johnson, supra) (other citations omitted). We agree that the term "property" in § 1825(b)(2) encompasses all forms of interest in property, including mortgages and other liens.

Furthermore, plaintiff argues that the district court incorrectly interpreted and applied § 1825(b)(2) and offers an alternative reading of the statute. Plaintiff stresses that a literal reading of the statute discourages the private purchase of real estate tax liens and thus interferes with municipal real

estate tax collection. Plaintiff contends that her alternative interpretation of § 1825(b)(2) does not interfere with the local real estate tax machinery. Plaintiff proposes that we read § 1825(b)(2) in conjunction with two other sections of FIRREA-- § 1821(d)(5)(A)-(F), the claims processing provision, and § 1825(b)(1), the general exemption from taxation provision.

Section 1821(d)(5) sets forth the procedure for filing claims against an institution that has been put under FDIC receivership. The statute provides that the Corporation shall determine within 180 days "whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim." 12 U.S.C. § 1821(d)(5)(A)(i). Section 1825(b)(1) provides that the Corporation shall be exempt from all state and local taxation, "except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as real property is taxed. . . ." 12 U.S.C. § 1825(b)(1). Plaintiff maintains that these sections read together require that the FDIC choose, within 180 days, from one of the following alternatives: (1) abandon its interest in the property, (2) consent to be foreclosed, or (3) pay the tax liens.

First, we reject plaintiff's attempt to meld the 180-day time limit in the claims evaluation process with the rights of the FDIC under § 1825(b)(2) to withhold its consent to foreclosure. The claims processing provision nowhere references

§ 1825(b)(2), and § 1825(b)(2) itself contains no time limit on the ability of the FDIC to withhold its consent to the foreclosure of its rights. To the extent that the claims process might apply here, it would apply only as a timeliness requirement for filing a judicial action challenging the denial of a claim.

Second, we reject plaintiff's argument based on FIRREA's general tax exemption provision. Plaintiff relies on § 1825(b)(1) which provides that the Corporation is exempt from all state and local taxation, except that any real property of the Corporation shall be subject to state and local taxation "to the same extent according to its value as other real property is taxed. . . ." 12 U.S.C. § 1825(b)(1). Plaintiff cites to cases interpreting statutes other than FIRREA which include the previously quoted phrase. Plaintiff stresses that courts have interpreted this phrase as communicating Congress' intent not to interfere with the local real estate tax machinery. See Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 210 (1946). We agree with the judicial interpretations of this statutory phrase. Specifically, in the case of FIRREA, § 1825(b)(1) requires the payment of taxes on real property which the FDIC holds, so as not to deprive municipalities of the income they would have received had the property continued to be privately owned. Congress, however, has also enacted a more specific provision providing that no property of the Corporation shall be subject to foreclosure without the Corporation's

consent.  This is the section of FIRREA that is at issue in the instant case, and it is this provision on which we must focus.

Moreover, plaintiff cites to the recent Supreme Court decision in BFP v. Resolution Trust Corp., ___ U.S. ___, 114 S.Ct. 1757 (1994), as support for her contention that this court should not engage in a literal reading of § 1825(b)(2) but should instead look to other provisions of FIRREA and to the purpose of the Act.  Plaintiff argues that this court should follow the example of the Supreme Court in BFP and interpret a federal statute in a way that does not interfere with state and local laws governing real estate tax assessment and collection. However, the Supreme Court noted in BFP that it was taking into account the state regulatory background "[a]bsent a clear statutory requirement to the contrary."  BFP, 114 S.Ct. at 1762. In the instant case, 12 U.S.C. § 1825(b)(2) is a clear statutory requirement which prevents the FDIC's mortgages from being extinguished without its consent through the foreclosure of tax liens.

Plaintiff also advances the FDIC's Tax Policy Statement as support for her position.  Because the statute's language is clear, any reference to the FDIC's Tax Policy Statement is unnecessary.  See Matagorda, 19 F.3d at 220 (stating that it need not rely on FDIC's Tax Policy Statement because statute's language is unambiguous); cf. First State Bank v. United States, 599 F.2d 558, 564 (3d Cir. 1979) (holding that bank could not

predicate claim on alleged violation of FDIC Manual which was issued only for internal operating purposes), cert. denied, 444 U.S. 1013 (1980).

In conclusion, we reject plaintiff's alternative reading of 12 U.S.C. § 1825(b)(2) and affirm the district court's interpretation and application of the statute to protect the FDIC's mortgages from being extinguished without its consent through foreclosure of plaintiff's tax liens.

IV.

We now turn to the question of whether the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, applies in the instant case to divest the district court of jurisdiction over this action.  The TIA provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.  Plaintiff maintains that the FDIC, by invoking the protection of 12 U.S.C. § 1825(b)(2) in federal court, has restrained the collection of taxes and thus implicated the jurisdictional bar of the TIA.  Relying on FIRREA's state tax immunity provision, 12 U.S.C. § 1825(b)(1), the foreclosure provision at issue in the instant case, 12 U.S.C. § 1825(b)(2), and FIRREA's jurisdictional provision, 12 U.S.C. § 1819(b)(2), the FDIC contends that Congress intended to allow tax cases involving the FDIC to be litigated in federal court.  In essence,

the FDIC argues that Congress has impliedly created an exception to the TIA by subsequent legislation.

We do not necessarily agree with plaintiff that the district court's application of § 1825(b)(2) to protect the mortgage interests of the FDIC violates the TIA because it suspends the collection of taxes under state law until the FDIC consents to foreclosure of the tax liens. Withholding consent to foreclose from a private citizen does not implicate the assessment, levy, or collection of any tax. The statute is intended to prevent interference with taxation by governmental entities; however, upon the sale of the tax certificate, the tax obligation is satisfied. The holder's inability to foreclose does not affect the governmental entity's ability to assess, levy, or collect any tax, and thus, the TIA is not applicable.

We do, however, reject the FDIC's reliance on FIRREA's removal provision. See Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 472 (1976) (holding that jurisdictional statute is insufficient by itself to establish implied repeal of TIA). We also find that the express language of § 1825(b) is not sufficient evidence of Congress' intent to exempt the FDIC from the TIA.

We also hold that the TIA does not oust the district court of jurisdiction because the FDIC in these particular circumstances qualifies for the federal instrumentality exception to the TIA. See Federal Deposit Ins. Corp. v. New Iberia, 921

F.2d 610, 613 (5th Cir. 1991).  Under a judicially-created exception to the TIA, the United States and its instrumentalities can initiate actions in federal court to protect themselves from "unconstitutional state exactions."  See Department of Employment v. United States, 385 U.S. 355, 358 (1966); see also Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. at 470.

Congress enacted FIRREA as part of a comprehensive federal program to meet a financial crisis.  The statute provides that the FDIC shall act as receiver for failed banking institutions. In its role as receiver, the FDIC's assets are protected from foreclosure while it is winding up the affairs of a failed banking institution.  12 U.S.C. § 1825(b)(2).  The district court's application of this section to protect the FDIC's lien interest from being foreclosed without its consent does not violate the TIA, even if it were applicable, because the FDIC is acting in a governmental capacity when it winds up the affairs of failed banking institutions pursuant to FIRREA.  In light of the governmental role played by the FDIC in the instant case, we find that it qualifies for the federal instrumentality exception to the TIA.  In sum, the TIA did not oust the district court of jurisdiction over this action.

In Bank of New England Old Colony, N.A. v. Clark, 986 F.2d 600 (1st Cir. 1993), the First Circuit held that the FDIC was not a federal instrumentality for purposes of the TIA.  The First Circuit's decision is distinguishable.  First, only state tax

issues were involved in Clark; the FDIC alleged only state law grounds for relief. 986 F.2d at 601, n.4 602. In contrast, the FDIC in the instant case has invoked the protection of a federal statute, 12 U.S.C. § 1825(b)(2). Second, in Clark the FDIC was the assignee of a failed bank's claim for a refund of state excise taxes. 986 F.2d at 601. Thus, the FDIC's governmental role was minimal. However, in the instant case, the FDIC sought the protection afforded by a federal statute to prevent its assets from being foreclosed without its consent while it attempted to wind up the affairs of a failed bank.

Similarly, the governmental role played by the FDIC in Federal Deposit Ins. Corp. v. New York, 928 F.2d 56 (2d Cir. 1991), was also minimal, and it is on this basis that the Second Circuit held that the FDIC could not invoke the federal instrumentality exception. In New York, the FDIC was the assignee of a bank's claims against a city and state for assessing taxes on interest payments in contravention of a federal statute. Without reaching the question of whether the FDIC is a federal instrumentality, the court held that the FDIC could not invoke the exception because by bringing suit the FDIC was attempting to protect the interests of a commercial lending institution rather than the federal government. New York, 928 F.2d at 59.

In conclusion, even if the TIA were applicable, because the FDIC sought the protection of § 1825(b)(2) while acting in a

governmental capacity, it is entitled to invoke the federal instrumentality exception to the TIA.

V.

For the first time in her reply brief,[1] plaintiff raises the contention that the district court's application of 12 U.S.C. § 1825(b)(2) works a compensable taking of her property under the Fifth Amendment.[2] Both parties acknowledge that the statute does not extinguish plaintiff's tax liens nor does it subordinate them to the FDIC's liens. The FDIC's withholding of their consent to foreclosure merely delays plaintiff's enforcement of the tax lien against the FDIC. Plaintiff contends, however, that, without just compensation, this indeterminate delay is unconstitutional.

Plaintiff relies on Matagorda in which the Fifth Circuit confronted this precise issue. Even though it concluded that the delay involved did not constitute a compensable taking, the Fifth

_____

[1] Where an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this Court. Republic of the Philippines v. Westinghouse Electric Corporation, 43 F.3d 65, 71 n.5 (3d Cir. 1995); see also Fed. R. App. P. 28(a)(3); Third Cir. Loc. App. R. 28.1(a)(i). In the instant case, we deviate from this general rule because appellee has addressed appellant's "takings" argument in its appellate brief. Moreover, both parties addressed this issue at oral argument.

[2] Plaintiff also argues that 12 U.S.C. § 1825(b)(2) as interpreted by the district court violates the Due Process Clause of the Fourteenth Amendment and her constitutional right of access to the courts. We find these contentions to be without merit. The "takings" issue, however, is a closer question and requires additional discussion.

Circuit in Matagorda cautioned that "[u]nmitigated delay, coupled with distinct investment-backed expectations, may, at some point, infringe on the entire "bundle" of rights enjoyed by the Appellants to the point that a compensable taking occurs." 19 F.3d at 225. See also Donna Independent School District v. Balli, 21 F.3d at 101 (holding that delays in foreclosing property tax liens did not constitute compensable takings under Fifth Amendment). We agree with the Fifth Circuit in Matagorda that at some point a delay in the ability to exercise property rights may constitute a compensable taking.

Furthermore, we hold that any delay should be measured from the point at which plaintiff could first have foreclosed under state law until the district court's decision. Thus measured, the delay in the instant case consists of one year and seven months. Plaintiff argues that this delay constitutes a taking for which she should receive just compensation. The FDIC counters that plaintiff is being fairly compensated for the delay by the interest accruing at the rate of 17-18% per annum on the tax liens. The FDIC also stresses that plaintiff's liens have priority over the FDIC's liens and that the property is much more valuable--10 times more valuable--than plaintiff's liens. Finally, the FDIC suggested at oral argument that a compensable taking will occur when the tax liens plus accrued interest exceed the fair market value of the property.

Without adopting that formula, based upon the foregoing facts and circumstances, we hold that plaintiff has not established that she is presently deprived of a sufficient property interest to create a compensable taking.

## VI.

For the foregoing reasons, the judgment of the district court is affirmed.